Roger HILL, Plaintiff,

v.

F.R. TRIPLER & CO., INC., Defendant.

No. 89 Civ. 5917 (LAK).

United States District Court,
S.D. New York.

Nov. 15, 1994.

---

Robert V. Marrow, Matthew C. Cocca, Salon, Marrow & Dyckman, for plaintiff.

Suzanne M. Halbardier, Barry, McTiernan & Moore, for defendant.

**OPINION**

KAPLAN, District Judge.

This personal injury case was tried before a jury on September 21, 1994 through September 28, 1994. Defendant now moves to set aside the verdict and judgment as excessive and against the weight of the credible evidence, to set aside the verdict as being based on improper evidence and argument, for judgment as a matter of law, and for a stay of execution of the judgment pending decision of this motion.

In brief summary, the evidence showed that plaintiff was shopping in defendant's retail store at Madison Avenue and Forty-sixth Street. He sought to leave through a pair of metal-framed glass doors which formed part of the main entrance to the store. The right-hand door had been locked by defendant because it was not operating properly. No sign or other warning was posted to alert prospective users. When plaintiff sought to push the door open, the door did not yield. His head and left knee made contact with the door. The door shattered, and shards of glass pierced the left knee. Plaintiff, then an athletic twenty-six year old man, has had two operations on the knee, continues to have pain and discomfort as well as some permanent damage to the joint, and cannot engage in a number of his previous activities without severe pain. The jury returned a special verdict finding defendant negligent, finding that plaintiff had not been contributorily negligent, and assessing the damages at $400,000.

*Industrial Code Rule 47*

■ Defendant's principal argument is that the Court erred in submitting to the jury plaintiff's contention that defendant had violated New York Industrial Code Rule 47 and that this might be considered by the jury as some evidence of negligence. (Halbardier Aff. ¶¶ 4–6)

Industrial Code Rule 47, 12 N.Y.C.R.R. §§ 47.1 *et seq.*, provides in substance that "transparent safety glazing material" must be used in glass doors newly installed after January 1, 1968 and as replacement glass installed in existing glass doors after January 1, 1969. 12 N.Y.C.R.R. § 47.11 (1967). "[T]ransparent safety glazing material" is defined as follows: "Materials which will clearly transmit light and also minimize the possibility of cutting or piercing injuries resulting from breakage of the material. Materials covered by this definition include laminated glass, tempered glass (also known as heat-treated glass, heat-toughened glass, case-hardened glass or chemically tempered glass), wired glass, and rigid plastic." *Id.* § 47.5(j). Plaintiff contended that the door here in question was newly installed after January 1, 1968 and that the door did not contain "transparent safety glazing material." Defendant argues that there was no competent evidence that the door did not contain "transparent safety glazing material."[1]

The only direct evidence concerning the nature of the glazing material in the door was the testimony of Mr. Jones, the manager of the store at the time of the accident. Mr. Jones was asked at his deposition whether the door was made of plate glass or safety glass. He responded "plate glass." This testimony was received in evidence without objection. Mr. Jones thereafter was called as a witness, and defendant did not ask him to elaborate on his deposition testimony, or to explain what he meant by "plate glass," or what the basis for his deposition testimony had been.[2] In addition, there was evidence that the door glass broke into shards, some of which pierced plaintiff's knee. Plaintiff maintained that the manner in which the glass broke and the nature of the injury were circumstantial evidence that the material did not comply with the Rule.

1. There was evidence from which the jury could have concluded that the door was newly installed after January 1, 1968. Defendant does not now dispute the sufficiency of the evidence on that point.

2. When Mr. Jones was on the stand, he was asked by plaintiff whether the door contained safety glass. I sustained defendant's objection on the ground that plaintiff had failed to lay a foundation as to the basis of the witness's knowledge. I subsequently was reminded that the deposition testimony referred to in the text had been received previously.

Defendant argues that Mr. Jones was not an engineer and that he did not specifically testify that the door did not contain "transparent safety glazing material" as defined by the Rule. (Halbardier Aff. ¶ 4) But Mr. Jones professed no lack of knowledge when asked whether the door was safety glass or plate glass. Defendant did not question his competence to testify on the subject when the evidence was offered. The regulatory definition of "transparent safety glazing material"—in substance, material that will transmit light but resist shattering—is extremely general and, save for certain of the illustrative examples contained in the definition, entirely non-technical. Mr. Jones' answer implicitly asserted, or could be viewed as having asserted, that plate glass and safety glass were two different materials, that he knew the difference, and that this door did not contain safety glass.[3]

Plaintiff was entitled to have submitted to the jury every theory supported by evidence which, if believed, would make out negligence. *See, e.g., Carvel Corp. v. Diversified Management Group*, 930 F.2d 228, 230 (2d Cir.1991). Here, Mr. Jones' answer was susceptible of the interpretation that the door did not contain "safety glass." The jury, if it accepted that interpretation, was entitled to conclude that the door did not contain "materials which will clearly transmit light and also minimize the possibility of cutting or piercing injuries resulting from breakage of the material" and, in consequence, that defendant violated Industrial Code Rule 47. This view is reinforced by the testimony that the glass broke into shards and by the nature of plaintiff's injury—cutting and piercing.[4]

The jury was charged that the question whether the door contained "transparent safety glazing material" within the meaning of the Rule was for it to determine. Counsel were entirely at liberty to argue both the appropriate interpretation of Mr. Jones' testimony and whether, if plaintiff's interpretation were accepted, it should be taken as establishing that Industrial Code Rule 47 was not complied with. In my view, the submission of these matters was appropriate. Moreover, in view of the clear evidence of negligence given defendant's admission that there was no sign or other warning that the glass door was locked, any error in charging the Industrial Code Rule 47 theory was harmless. *See Lusby v. T.G. & Y. Stores, Inc.*, 796 F.2d 1307, 1310 (10th Cir.), *cert. denied*, 479 U.S. 884, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986) (harmless error analysis applied to faulty jury instructions in civil cases); *see Neubauer v. City of McAllen, Tex.*, 766 F.2d 1567, 1575 (5th Cir.1985) (reversible error when jury instruction made it possible to find against a party on a ground for which there is no evidence).

*Subsequent Remedial Measures*

■ Defendant asserts that "there were repeated arguments in questioning by plaintiff's counsel during the trial to the fact that a repair was made to the door after plaintiff's accident." (Halbardier Aff. ¶ 7) This, it asserts, violated Fed.R.Evid. 407 and requires a new trial.

There was no evidence of any repair of a type that reasonably could have been construed as an admission of a previous unsafe condition. If there was a reference to repair of the door—and the Court recalls none—it would have been harmless even if timely objection had been made. No one reasonably could expect that the owner of a store on Madison Avenue would fail to repair a broken glass door giving access to the estab-

3. Many reported decisions have indicated that plate glass is not safety glass. *E.g.; Jenkins v. McLean Hotels, Inc.*, 859 F.2d 598, 601 (8th Cir.1988); *Zellers v. Theater of the Stars*, 171 Ga.App. 406, 407, 319 S.E.2d 553, 554 (1984); *Cashman v. U.S. Postal Service*, No. 87–0065P, 1989 WL 42626 (D.Me.1989); *Heartland Stores, Inc. v. Royal Ins. Co.*, 815 S.W.2d 39, 40 (Mo.Ct. App.1991); *Feisthamel v. State of New York*, 89 A.D.2d 756, 453 N.Y.S.2d 904 (3d Dep't 1982); *Taylor v. Ogden City Sch. Dist.*, 881 P.2d 907 (Utah Ct.App.1994).

4. During argument on this issue in the course of the trial, I indicated skepticism as to whether the evidence concerning the manner in which the glass broke and the nature of the injury were sufficient bases, absent expert testimony, for permitting the jury to conclude that the glass did not conform to Industrial Code Rule 47. While plaintiff would have been well advised to offer such expert testimony, it appears that his factual argument concerning the different breakage characteristics is correct. *Cashman*, 1989 WL 42626, *3 n. 5.

lishment. There certainly would have been no prejudice to defendant.

## The Vicarious Admissions

Plaintiff and a passerby who went to his aid, Frank Reyes, both testified to statements allegedly made while plaintiff lay in the store vestibule waiting for an ambulance by persons believed by them to be store employees. The first was a response to a request by the passerby for a tie to assist in binding plaintiff's wound, the response being in substance that the person in question had no authority to give Mr. Reyes a tie but that he could buy one for $75. The second was an inquiry by one of two persons standing in the vestibule to the other as to why no warning sign had been placed on the locked door.

Defendant argues that both statements should have been excluded because there was no evidence that the employees in question had authority to speak for the defendant. It argues also that the first statement—that concerning the tie—was irrelevant and prejudicial. (Halbardier Aff. ¶¶ 8–11)

■ Defendant's reliance on the "speaking agent" rule is misplaced here. Fed.R.Evid. 801(d)(2)(D) provides in substance that a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship ..." Hence, the plaintiff was not required to establish that the declarants were authorized to speak on behalf of the defendant.

As defendant questions only whether the statements were made by persons authorized to speak for the defendant (*see* Halbardier Aff. ¶¶ 8–11), there is no need to pass on whether requirements of Rule 801(d)(2)(D) were satisfied. In an abundance of caution, however, I note that I am entirely satisfied that they were.

■ The existence of the agency at the time of the statements and the scope of employment are preliminary matters for the trial court under Fed.R.Evid. 104(a). *See In Re Coordinated Pretrial Proceedings*, 906 F.2d 432, 458 (9th Cir.1990), *cert. denied*, 500 U.S. 959, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991). The trial court is not bound by the rules of evidence, and may consider the proffered statements themselves in making such determinations. Fed.R.Evid. 104(a); *In Re Coordinated Pretrial Proceedings*, 906 F.2d at 458.

■ Here, there was ample evidence as to the necessary foundation. Both plaintiff and Mr. Reyes said that the statements in question both were made by one of two persons dressed in business attire who came into the vestibule from the store after the accident. Mr. Reyes testified that the inquiry concerning the absence of a sign was made by an individual referred to by the second as "Jones," which was the name of the store manager. Mr. Reyes added that the second individual, when asked by plaintiff, went to find plaintiff's mother, who was shopping in the store. I find the comment concerning the tie relevant to establish whether the speakers in the vestibule were employees. The probative value of the statement, in fact, was created by defendant's objection that there was no evidence that the persons in the vestibule had authority to speak for the defendant.

Mr. Jones, the store manager, admitted having been in the vestibule at the relevant time and admitted asking store personnel who had locked the door, but denied asking why there had been no sign and denied the tie comment.

On the basis of this evidence, I found that the alleged statements were made by defendant's personnel during the existence and within the scope of their employment, and I see no reason to reach any different conclusion on this motion.

## Discovery

■ Plaintiff had an MRI and a bone scan shortly before trial and elicited expert testimony regarding possible future surgery including a knee replacement. Defendant argues that it was not afforded an opportunity to conduct discovery on the "last minute medicals." (Halbardier Aff. ¶ 12)

Defendant offered no evidence of any failure by plaintiff to provide any discovery that he was obliged to provide. Plaintiff's counsel

represented that the material was produced to defendant promptly upon their receipt of it, and defendant does not dispute that assertion. At least some of the evidence in question was mentioned at the pretrial conference on September 12, 1994, but defendant sought no additional discovery and no continuance, either then or at trial. Defendant's expert, moreover, contradicted plaintiff's expert as to the likelihood of the future surgery, so defendant obviously had an opportunity to meet plaintiff's evidence.

I find no failure on the part of the plaintiff's counsel to make appropriate disclosure and no prejudice. Nor did defendant adequately preserve the point, given the lack of any application for a continuance of further discovery.

*The Size of the Verdict*

■ A jury's award of damages will not be disturbed unless it is so excessive that it shocks the judicial conscience and constitutes a denial of justice.[5] *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir.1990); *Martell v. Boardwalk Enterprises, Inc.*, 748 F.2d 740, 750 (2d Cir.1984); *Koerner v. Club Mediterranee, S.A.*, 833 F.Supp. 327, 333 (S.D.N.Y. 1993).

■ In assessing whether a damage award is excessive, a New York court sitting in diversity may look to other jury awards condoned and remitted by the courts of the state whose substantive law governs the rights of the parties—in this case, New York courts. *See Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1058 (2d Cir.1990). It is noted that New York appellate courts regard prior awards as not binding but instructive. *Martell*, 748 F.2d at 750.

■ Plaintiff's injuries were serious. Plaintiff was an athletic twenty-six year old when the accident occurred. He was subjected to severe pain following the incident. He has endured two operations thus far and is faced with the prospect of one or two additional operations, possibly including knee replacement. There is permanent damage to the joint. He is in constant, although varying, pain. He has been forced to curtail sharply a number of the athletic activities that formed an important part of his life. His life expectancy is over forty-two years, and he thus is likely to endure the consequences of this accident for a lengthy period. Medical expenses to date have been approximately $20,000. By the time of trial, however, there was evidence that Hill was doing well; he testified that his knee was much better by 1992–93.

I recognize that there was no claim of economic loss. Plaintiff presented no evidence that the accident interfered with plaintiff's career in any substantial way, except that his injuries have made travel for his business more painful. But I am not prepared to say that a rational jury, assuming it believed plaintiff and his expert as did this one, could not have reached this result.

An examination of the $400,000 award to plaintiff in light of the evidence and of awards for injuries of varying degrees of comparability establishes that the damage award is not excessive or shocking to the conscience. On an inflation-adjusted basis, the jury's award of damages in this case may be on the high end of awards sustained by New York courts.[6] However, I find that the

5. A 1986 amendment to N.Y.C.P.L.R. § 5501(c) replaced the "shocks the conscience" standard for review of damage awards by the Appellate Division of the New York Supreme Court. Under the amended section, a jury award must be set aside whenever it "materially deviates from what would be reasonable compensation." The Second Circuit has left open the question of whether this standard applies to federal diversity actions. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1190 (2d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). As the difference in the two standards would have no practical effect in this case, I do not reach the issue of the applicability of Section 5501 to New York federal courts sitting in diversity.

6. *See Castellano v. City of New York*, 183 A.D.2d 800, 584 N.Y.S.2d 114 (2d Dep't 1992), *appeal denied, appeal dismissed,* 80 N.Y.2d 1021, 592 N.Y.S.2d 667, 607 N.E.2d 814 (1992) (court ordered new trial unless $500,000 pain and suffering award was reduced to $200,000); *Burton v. New York City Hous. Auth.*, 191 A.D.2d 669, 595 N.Y.S.2d 807 (2d Dep't 1993) (court ordered $525,000 award reduced to $262,000); *Bisbee v. Indep. Coach Corp.*, 182 A.D.2d 661, 582 N.Y.S.2d 255 (2d Dep't 1992) ($303,000 award not excessive); *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 684 (2d Cir.1993) ($750,000 award was fair compensation); *Moffatt v. Arlen Realty Management, Inc.*, 109 A.D.2d 934, 486

award does not constitute a denial of justice and therefore will not be disturbed.

*Judgment As A Matter of Law*

The motion for judgment as a matter of law is without merit. There was ample evidence from which the jury could have found negligence, including the admitted failure of the defendant to post a sign or otherwise to warn its customers that one side of the double glass door through which one normally entered and left the store was locked. The evidence of causation and damage was obvious. Nor is there any responsible basis for asserting that no reasonable jury could have found plaintiff free of contributory negligence.

*Stay Pending Decision*

The application for a stay pending decision of this motion is moot.

Defendant's motion is denied in all respects.

SO ORDERED.

N.Y.S.2d 410 (3d Dep't 1985) ($300,000 award not excessive); *Stewart v. West Bradford Corp.*, 88 A.D.2d 1100, 453 N.Y.S.2d 255 (3d Dep't 1982) ($300,000 award not excessive); *Tejeda v. City of New York*, 129 A.D.2d 697, 514 N.Y.S.2d 459 (2d Dep't 1987) ($1.4 million award reduced to $700,000).